UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **WILLIAM SILVA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 13-10572-FDS |
| | ) | |
| **F/V SILVER FOX LLC, as owners of THE F/V SILVER FOX,** | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S
## MOTION TO ENFORCE SETTLEMENT

**SAYLOR, J.**

This is an action arising out of a tragic event at sea, in which the captain of a clamming vessel died while attempting to save a fellow seaman. The seaman, William Silva, brought a claim against the owner of the vessel, F/V Silver Fox LLC, for negligence under the Jones Act, unseaworthiness, and maintenance and cure.

Defendant has moved to enforce a settlement agreement with Silva entered into in 2010. Silva has opposed the motion, contending that the agreement is invalid. For the reasons set forth below, the motion to enforce settlement will be granted.

**I.     Background**

Unless otherwise noted, the Court treats the following facts as undisputed for purposes of this motion.

William Silva worked as a deckhand and member of the crew of the F/V SILVER FOX, a commercial clamming vessel owned by F/V Silver Fox LLC ("Silver Fox"). Around April 24,

2010, Silva was working on the vessel when he became entangled in the equipment and was dragged overboard. After other attempts to rescue him failed, the captain of the vessel swam to save Silva. However, the captain then suffered a heart attack and died. Silva was later rescued by the Coast Guard.

On August 23, 2010, Silver Fox and Silva signed a General Release. (Mot. to Enforce, Ex. B). The agreement provided that Silver Fox pay Silva $21,680.50—the sum of $525 for maintenance, $2,400 for advances, $3,135.50 for medical bills, and $15,000 in additional money. In return, Silva discharged all rights and claims against Silver Fox. The agreement specifically listed as released all claims for negligence, unseaworthiness, and maintenance and cure. Silva wrote in his name, age, marital status, and address. He filled in other blanks, including "yes" to the questions "have you read this paper," "do you know what this paper is that you are signing," and "do you know that signing this paper settles and ends every right and claim you have for damages as well as for past, present, and future maintenance, cure and wages?" Silva signed his name over a watermark stating "THIS IS A RELEASE," and the agreement was witnessed by three individuals and notarized.

Settlement counsel for Silver Fox, David DuBois, recorded the signing. (*See* Mot. to Enforce, Ex. A, Transcript).[1] Silva affirmed that he was present freely and voluntarily, that he was advised that he had the right to be represented by an attorney, that he knew he still had a right to an attorney, that he was without representation of his own voluntary will, that he knew

---

[1] Because counsel for plaintiff does not challenge the authenticity or accuracy of the transcript, the Court will consider it. *See Pereira v. Boa Viagem Fishing Corp.*, 11 F. Supp. 2d 151 (D. Mass. 1998) (considering as evidence transcript of tape-recording of settlement conference); *see also Braxton v. Zapata Offshore Co.*, 684 F. Supp. 921, 922-23 (E.D. Tex. 1988) (same).

his right to maintenance and cure, and that he received a check for $21,680.50 and was fully satisfied. DuBois and Silva read through the contract together. They specifically discussed that Silva would attend one additional therapy counseling session, on August 25, that Silver Fox would pay for that session, and that Silva had no plans to return to counseling afterward.

On March 12, 2013, Silva filed a complaint in this Court asserting claims against Silver Fox for negligence, unseaworthiness, and maintenance and cure. Defendant filed a motion to enforce settlement on September 27, 2013, based on the 2010 settlement. Plaintiff has opposed the motion, contending that he did not receive adequate compensation, and that, at the signing, he was unaware of his rights.

## II.    Standard of Review

In general, courts apply the summary judgment standard of Fed. R. Civ. P. 56 when deciding motions to enforce a seaman's agreement. *Schultz v. Paradise Cruises, Ltd.*, 888 F. Supp. 1049, 1052 (D. Haw. 1994) (citing *Braxton v. Zapata Offshore Co.*, 684 F.Supp. 921 (E.D.Tex.1988)). Thus, considering the evidence in the record, a court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). *See Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir.1999). Enforcement is inappropriate where material facts concerning the agreement are in dispute. *Id.*

## III.    Analysis

A party to a valid settlement agreement may ask the courts to enforce that agreement when the other party refuses to comply. *See Quint v. A.E. Staley Mfg. Co.*, 246 F.3d 11, 14 (1st Cir. 2001); *Petition of Mal de Mer Fisheries, Inc.*, 884 F. Supp. 635, 637 (D. Mass. 1995).

While usually a court will inquire into whether an agreement was complete and entered into with authority, the inquiry to determine whether a seaman's release is valid is especially searching, because of the special status of seamen as "wards of the admiralty." *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246 (1942); *Medina v. Marvirazon Compania Naviera, S.A.*, 533 F. Supp. 1279, 1283-84 (D. Mass. 1982) *aff'd*, 709 F.2d 124 (1st Cir. 1983). The shipowner bears the burden of proving the release's validity. *Bay State Dredging & Contracting Co. v. Porter*, 153 F.2d 827, 833 (1st Cir. 1946) (citing *Garrett*, 317 U.S. at 247).

Substantively, courts are required to ask three questions to determine the validity of a seaman's agreement: (1) whether the release was executed freely, without deception or coercion; (2) whether the seaman had a full understanding of his rights, in light of the medical and legal advice available to him and the adequacy of consideration; and (3) whether the release was fair. *Id.*, 317 U.S. at 248. In addition, where the seaman was not represented by counsel, at a minimum he "should have been told that he had an unbeatable right of action under the maritime law for maintenance and cure, not dependent on proof of negligence; and that in addition he had, under the Jones Act, a right to maintain an action at law for damages for injuries resulting from the negligence of any of the officers or employees of the defendant." *Richards v. Relentless, Inc.*, 341 F.3d 35, 42 (1st Cir. 2003) (citing *Bay State Dredging*, 153 F.2d at 833). According to that standard, the agreement here should be enforced.

First, plaintiff appears to have freely executed the release. He stated during the signing that he was voluntarily present and signed the agreement below the phrase "I am signing this of my own free will," words which defendant's settlement counsel read aloud to him. No deception or coercion appears in the record, and plaintiff has offered no evidence of such, beyond mere

intimations. Nor has plaintiff asserted that he was in a position of economic or physical duress. *See Clinton v. United States*, 254 F.2d 409, 410 (9th Cir. 1958). Thus, there is no genuine dispute as to whether the agreement was freely executed.

Second, at the time of the signing, plaintiff indicated that he understood his rights. He was aware of his medical condition, having received medical treatment (paid for by defendant) after the incident. *See Braxton v. Zapata Offshore Co.*, 684 F. Supp. 921, 923 (E.D. Tex. 1988) (upholding release where "plaintiff was advised of his medical condition, and understood the future risks of his injury"). Although plaintiff contends that he was, and still is, receiving mental health treatment for post-traumatic stress disorder and depression, he has not alleged that he was impaired in his understanding such that he could not comprehend the terms of the agreement and lacked the capacity to contract. *See Clinton*, 254 F.2d at 410 (listing as factor to determine release's validity whether seaman was "suffering from the effects of the injury which limited his ability to fully comprehend"); *see also Medina*, 533 F. Supp. at 1283-84 (holding invalid a release where seamen were unable to understand the agreement's terms because they were uneducated and spoke little English).

Plaintiff also knew his legal position. He had consulted, albeit "briefly," with an attorney, and defendant's settlement counsel thoroughly explained his rights to him. Counsel detailed a seaman's right to maintenance and cure and the meaning of those terms; described plaintiff's right to file a lawsuit; and repeatedly questioned whether plaintiff was aware of his right to an attorney, at any time. Plaintiff assured him that he freely chose to forgo an attorney's counsel. Although counsel did not follow the exact phrasing of *Richards v. Relentless*, 341 F.3d at 42, he effectively communicated the essential terms of the bargain to plaintiff. *See Bay State*

*Dredging*, 153 F.2d at 833 (holding that "the agent [for defendant] was under an obligation to bring home to the [unrepresented] plaintiff an understanding of the rights he was giving up in exchange for the settlement offered"). The mere fact that an attorney for defendant, an interested party, explained to plaintiff his rights is not grounds alone for invalidating a release. *See Pereira v. Boa Viagem Fishing Corp.*, 11 F. Supp. 2d 151, 152-53 (D. Mass. 1998) (upholding release where counsel for defendant explained rights to unrepresented plaintiff); *see also Braxton v. Zapata Offshore Co.*, 684 F. Supp. 921, 924 (E.D. Tex. 1988) (same); *Sea-Land Serv., Inc. v. Sellan*, 64 F. Supp. 2d 1255, 1261 (S.D. Fla. 1999) *aff'd*, 231 F.3d 848 (11th Cir. 2000) (same).

Furthermore, despite plaintiff's contention that the $15,000 new money was "woefully low" (Opp. at 5), the consideration is not inadequate. The incident was undoubtedly harrowing. But defendant provided living expenses and medical treatment, plus new money, in return for the release. Plaintiff agreed to that bargain. Considered as a whole, the evidence demonstrates that he fully comprehended his rights, and so could knowingly waive them as part of a release.

Third, the agreement is fair. Plaintiff has offered no evidence of procedural or substantive unfairness, and none otherwise appears in the record. Each party exchanged valuable consideration with full knowledge of their respective rights. The fact that plaintiff now regrets the bargain is insufficient to render it unfair. *Pereira*, 11 F. Supp. 2d at 153 ("[S]econd thoughts are not a reason for undoing an agreement that was proper and valid when the parties concluded it.").

In sum, the Court finds that the release signed by plaintiff and defendant on August 24, 2010, is valid.

Plaintiff's argument that the agreement should be set aside because he had not yet

reached maximum medical improvement is unavailing.  When further treatment is merely palliative, rather than curative, a shipowner's obligation to pay maintenance and cure ends.  *Saco v. Tug Tucana Corp.*, 483 F. Supp. 2d 88, 99 (D. Mass. 2007).  And the law permits seamen, knowingly and voluntarily, to enter into agreements, even prior to that point, that release shipowners from that duty.  *Pereira*, 11 F. Supp. 2d at 153.  Here, not only did plaintiff release defendant from paying for any further medical care, but defendant did pay his medical bills through the appointment after which plaintiff and his doctor asserted he would be well.  (Mot. to Enforce, Ex. A, at 3-4).

Accordingly, the Court will grant defendant's motion and enforce the agreement.

## IV.     Conclusion

For the foregoing reasons, defendant's motion to enforce the settlement is GRANTED.

**So Ordered.**

Dated: October 31, 2013

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge